UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LITTIECE JONES,

                Plaintiff,              Case No. 2:24-cv-10276

v.                              Honorable Susan K. DeClercq
                               United States District Judge
HOSPITALITY STAFFING, d/b/a
FIRST HOSPITALITY,              Honorable David. R. Grand
                               United States Magistrate Judge

                Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO
ENFORCE SETTLEMENT (ECF No. 53), DIRECTING THE PARTIES TO
SIGN AMENDED SETTLEMENT AGREEMENT, AND DIRECTING
PARTIES TO SUBMIT DISMISSAL PAPERS**

This matter is before the Court on Defendant's motion to enforce the parties'

settlement agreement. As explained below, the motion will be granted, the settlement

agreed to by the Parties on October 9, 2025, will be enforced, and the Parties will be

directed to execute a settlement agreement that reflects the material terms agreed to

on October 9, 2025—which includes a hiring bar that applies *only* to the corporate

entity identified on the record on October 9, 2025, and not its affiliated entities.

## I. BACKGROUND

On February 1, 2024, Plaintiff Littiece Jones sued Defendant Hospitality

Staffing, d/b/a First Hospitality (First Hospitality), who employed Jones at the

"Residence Inn Ann Arbor – Downtown." ECF No. 1 at PageID.2–3. Jones alleged

First Hospitality discriminated and retaliated against her on the basis of her age, disability, and religion. *See id.* at PageID.4–5. Accordingly, Jones sought "reinstatement," on-the-job training, "scheduling as agreed during hiring phase," federal monitoring, and "additional damages or other relief as determined in court." *Id.* at PageID.7.

On October 9, 2025, Jones and First Hospitality appeared for a settlement conference before United States Magistrate Judge David R. Grand. ECF No. 44 (sealed). After more than three hours of negotiation, the Parties reached a settlement—the material terms of which were placed on the record before Judge Grand. *See id.* at PageID.383–85 (sealed). To that end, First Hospitality identified the amount of money it would pay to Jones in exchange for Jones's dismissal of her lawsuit against it. *Id.* at PageID.385 (sealed). First Hospitality further detailed that, as agreed by the Parties, it would pay half of the settlement amount to Jones as a wage check and the other half as a 1099 check. *Id.* (sealed). First Hospitality also explained that, under the settlement terms they had agreed to, Jones would withdraw her pending Equal Employment Opportunity Commission (EEOC) charge against First Hospitality, First Hospitality would not admit liability, the settlement agreement would include a confidentiality clause and a non-disparagement clause, and First Hospitality would provide a neutral job reference if contacted by any potential employer of Jones. *Id.* (sealed). First Hospitality further stated that ["]the

- 2 -

settlement agreement would also include other standard miscellaneous settlement terms that the parties can work, work together on." *Id.* (sealed).

After all these settlement terms were laid out, Judge Grand asked Jones if she heard and understood all the terms. *Id.* Jones responded by asking what First Hospitality's attorney meant when "he said settlement to be discussed or determined?" *Id.* at PageID.386 (sealed). Judge Grand responded by explaining the material terms First Hospitality had detailed on the record, and then noting that all that was left was for the parties to "work out the verbiage" to put things in writing, but that the Parties were "not going to sit here right now and wordsmith all that—all those details." *Id.* (sealed).

At that point, Jones said that she understood and agreed to the material terms of the settlement agreement. *See id.* at PageID.386–87 (sealed). She then asked one more question about how the settlement agreement would impact her eligibility to be employed by Marriott. *Id.* at PageID.387 (sealed). A First Hospitality representative clarified on the record that Jones would be ineligible for rehire by First Hospitality, but that the settlement agreement did not prevent Jones from being hired by any other hotels "outside of First Hospitality." *Id.* (sealed). Jones thanked the First Hospitality representative for his clarification, and Judge Grand complimented both Jones and the First Hospitality representative for their mutual appreciation of one another during the settlement negotiations. *Id.* at PageID.388

(sealed).

Yet two days later, Jones filed a "notice" in which she asserted that due to "outstanding discovery and pending EEOC matter, [she] cannot confirm that the settlement discussions reflect a knowing and voluntary agreement or a complete 'meeting of the minds.'" ECF No. 42 at PageID.376. According to Jones, "[a]fter the court recording concluded, [the Parties] discussed additional [settlement] terms off the record" and "[s]tatements were made during that discussion that [she] did not agree with and that were not placed on the record." *Id.* Accordingly, Jones requested a 30-day extension of the deadline to file a stipulated dismissal order to permit the Parties "to clarify on the record the terms discussed and any disputed issues." *Id.*

On October 14, 2025, Judge Grand denied the request Jones made in her "notice," and directed that "[a]ny further challenge to the settlement, or request to enforce it, must be by formal motion."

On October 27, 2025, the parties appeared for a virtual status conference before Judge Grand to discuss the concerns Jones raised regarding the settlement agreement the Parties had reached. *See* ECF Nos. 46–48. In the minute entry for that virtual status conference, Judge Grand noted that "[t]he parties shall continue their discussions of those matters privately" before appearing for another virtual status conference two weeks later. Judge Grand had another two virtual status conferences with the parties in November. *See* ECF Nos. 49; 51.

- 4 -

On December 9, 2025, the parties appeared for another virtual status conference with Judge Grand, during which it was agreed that First Hospitality would provide Jones "with a final revised draft settlement by Friday, December 12, 2025, and that [Jones] shall advise [First Hospitality] by Friday, December 19, 2025, as to whether she will execute the agreement." Judge Grand entered a text only order noting that "[i]n the event the agreement is not executed, then any party seeking to enforce the settlement agreement or seeking any other relief shall have until January 30, 2026, to file an appropriate motion."

Jones did not sign the settlement agreement, so on January 29, 2026, First Hospitality filed a sealed motion to enforce the settlement agreement, seeking a court order to enforce the settlement terms and compel Jones to sign the settlement agreement that incorporated "all material terms reached during the Settlement Conference." ECF No. 53 at PageID.402 (sealed). Jones opposes First Hospitality's motion, arguing that it attempts "to enforce a later-written agreement containing materially expanded provisions that were not fully discussed, finalized, or mutually agreed upon during the oral proceeding." ECF No. 60 at PageID.483 (sealed).

## II. LEGAL STANDARD

The Sixth Circuit has long recognized that district courts have inherent authority to enforce agreements to settle in pending litigation. *See Jaynes v. Austin*, 20 F. App'x 421, 424 (6th Cir. 2001); *see also Kukla v. Nat'l Distillers Prods. Co.*,

483 F.2d 619, 621 (6th Cir. 1973).  Before entry of judgment or dismissal, no separate basis for jurisdiction is required to enforce the settlement agreement. *See Jaynes*, 20 F. App'x at 423.

A settlement agreement may be enforced where the parties have reached an agreement on its material terms, regardless of whether a final settlement agreement has been reduced to writing. *Brock v. Schuener Corp.*, 841 F.2d 151, 154 (6th Cir. 1988); *see also Kukla*, 483 F.2d at 621 (observing that trial courts may enforce a settlement agreement "even where the agreement has not been arrived at in the presence of the court nor reduced to writing)." However, "[b]efore enforcing settlement, the district court must conclude that agreement has been reached on all material terms. The court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock*, 841 F.2d at 154 (internal citations omitted).

"Whether the parties actually reached an agreement is a question of fact for the district court," *Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 717 (6th Cir. 2010), which is governed by state contract law, *Cuyahoga Valley Ry. Co. v. U.S. Bank Tr. Nat'l Ass'n*, 515 F. App'x 494, 498 (6th Cir. 2013) ("Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law." (quotation marks and citation omitted)). A district court is not required to hold an evidentiary hearing "where an

agreement is clear and unambiguous" and "no substantial dispute exists regarding the entry into and terms of an agreement." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2000).

Because a settlement agreement is a type of contract governed by contract law, "whether a settlement agreement is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *Remark LLC v. Adell Broad.*, 817 F. Supp. 2d 990, 1001 (E.D. Mich. 2011) (quoting *Bamerilease Cap. Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992)). Michigan law provides that, "[b]efore a contract can be completed, there must be an offer, acceptance, consideration, and a meeting of the minds on all essential terms." *Id.* (citing *Kloian v. Domino's Pizza, LLC*, 733 N.W.2d 766, 770 (Mich. Ct. App. 2006)). The essential terms of a settlement agreement are usually payment in exchange for a release of claims and a dismissal of the case. *See e.g.*, *Kloian*, 733 N.W.2d at 771. A "meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* (quoting *Kamalnath v. Mercy Mem. Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992)).

"As a general rule, settlement agreements are 'final and cannot be modified.'" *Clark v. Al-Amin*, 872 N.W.2d 730, 736 (Mich. Ct. App. 2015) (quoting *Smith v. Smith*, 823 N.W.2d 114, 116 (Mich. Ct. App. 2011)). "Thus, 'a party cannot void a

- 7 -

settlement agreement merely because he has had a change of heart, nor can he do so merely because his assessment of the consequences of the settlement was incorrect.'" *Bennett v. Prudential Ins. Co. of Am.*, No. 23-11070, 2025 WL 2452378, at *2 (E.D. Mich. Aug. 26, 2025) (quoting *Clark*, 872 N.W.2d at 736).

### III. DISCUSSION

Here, there is no question that the Parties entered into a valid and enforceable settlement agreement on October 9, 2025. Indeed, after a lengthy settlement conference with Judge Grand, the Parties placed their agreement on the record, stating that First Hospitality would pay Jones an agreed-upon sum of money in exchange for Jones to both (1) dismiss her claims against First Hospitality, and (2) withdraw her pending EEOC charge against First Hospitality. *See* ECF No. 44 at PageID.384–85 (sealed). And after these terms were placed on the record, Jones asked two clarifying questions, which were answered by Judge Grand and a First Hospitality representative, and she indicated she understood and agreed to those terms. *See id.* at PageID.385–88 (sealed). Accordingly, there was an offer, acceptance, and consideration regarding the material terms placed on the record before Judge Grand on October 9, 2025. *See Remark*, 817 F. Supp. at 1001–02 ("Consideration is a bargained for exchange involving a benefit on one side, or a detriment suffered, or service done on the other." (cleaned up))

In her response opposing First Hospitality's motion, Jones contends that the written agreement First Hospitality provided to her included "materially expanded provisions" that she did not agree to on October 9, 2026. ECF No. 60 at PageID.483 (sealed). To that end, as this Court understands Jones's briefing, she takes issue with "affiliated entity restrictions, expansive release provisions, indemnification provisions, attorney fee-shifting provisions, sanctions language, and broad future employment restrictions" in the written settlement agreement. *Id.* at PageID.488 (sealed).

As to the "affiliated entity restrictions" and "broad future employment restrictions," Jones is correct that the material terms agreed to on the record before Judge Grand were that Jones would not be hirable by First Hospitality in the future, but that, under the terms of the agreement, Jones would not be prevented from being hired by "any other[] other hotels outside of First Hospitality." ECF No. 44 at PageID.387 (sealed). In this way, it appears the agreement presented to Jones, *see* ECF No. 53-6 at PageID.439 (sealed), exceeds the scope of the material terms agreed to on October 9, 2025, which included a bar on employment with *only* First Hospitality.[1] Thus, First Hospitality must present a new settlement agreement that

---

[1] Hospitality Staffing did not file a reply brief addressing Jones's arguments that the scope of the employment ban in the written agreement expanded the scope of the employment ban contemplated on the record on October 9, 2025. Nor has Hospitality Staffing explained the corporate relationship between First Hospitality and other, potentially related corporate entities.

accurately reflects the terms agreed to on the record on October 9, 2025, to Jones for her signature.

As to the remaining provisions and restrictions Jones takes issue with, *see* ECF No. 60 at PageID.488 (sealed), after review of the settlement agreement First Hospitality prepared for Jones to sign, *see* ECF No. 53-6 (sealed), it appears these provisions are all the types of "other standard miscellaneous settlement terms" that First Hospitality and Jones agreed on the record would be worked out later, that are not material terms of the agreement. ECF No. 44 at PageID.385 (sealed).

At bottom, the settlement terms placed on the record on October 9, 2025, leave no doubt that there was an "offer, acceptance, consideration, and a meeting of the minds on all essential terms" of the settlement between the Parties. *Remark*, 817 F. Supp. 2d at 1001 (citing *Kloian*, 733 N.W.2d at 770). Therefore, this Court will grant First Hospitality's motion to enforce the agreement as to the material terms they agreed to on the record—which includes a bar on future employment with *only* First Hospitality, not its affiliates. To that end, First Hospitality must present an amended settlement agreement to Jones reflecting that change, and Jones is directed to sign such agreement and corresponded stipulated dismissal papers.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion to Enforce Settlement, ECF No. 53 (sealed), is **GRANTED**. To that end, both Parties are **DIRECTED** to

sign an amended settlement agreement that reflects the material terms agreed to by the parties on the record on October 9, 2025, including a future employment bar that applies to *only* First Hospitality, not any other affiliated entity.

Further, it is **ORDERED** that the Parties are **DIRECTED** to submit dismissal papers **on or before August 19, 2026**.

**This is a final order but does not close the above-captioned case.**

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: July 17, 2026

- 11 -